337 A.2d 549
**COMMONWEALTH of Pennsylvania**
v.
**Willie LONDON, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 16, 1975.

Decided May 13, 1975.

568

George T. Guarnieri, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Suzanne Balen Ercole, Asst. Dist. Atty., Abraham J. Gafni, Deputy

Dist. Atty., for Law, Deborah Glass, Philadephia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

JONES, Chief Justice.

■ On February 19, 1971, the appellant, Willie London, was convicted in a nonjury trial of voluntary manslaughter, carrying a concealed deadly weapon and violation of the Uniform Firearms Act. Shortly thereafter post-trial motions were heard and denied. Appellant was sentenced to a term of imprisonment from one to ten years on the homicide charge and sentence was suspended on the weapons charges.[1] In this direct appeal,[2] appellant advances three grounds for reversal. We find appellant's arguments cannot be sustained, and therefore affirm.

■ Appellant's first assignment of error is that the evidence presented at trial was insufficient to sup-

1. Appellant's convictions of voluntary manslaughter and carrying a concealed deadly weapon have been appealed directly to this Court, although only the appeal on the homicide judgment is properly so taken. Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202(1), 17 P.S. § 211.202(1). However, since the Commonwealth has interposed no objection to the manner of appeal of the weapons conviction, and since both offenses arose from the same incident and factual background, this Court's power and competency to act is beyond question. Act of July 31, 1970, P.L. 673, No. 223, Art. V, § 503, 17 P.S. § 211.503.

2. Although direct appeal was not timely, on July 13, 1972, London petitioned this Court for leave to file an appeal as if timely from the judgment of sentence. By order of July 29, 1972, this Court remanded the matter to the court below to determine whether appellant's right to appeal had been violated and whether appellant was effectively represented by counsel. After an evidentiary hearing held on these issues, the court, on November 2, 1972, denied appellant's claim of ineffective assistance of counsel, but granted appellant the right to file an appeal as if timely filed.

port a conviction of voluntary manslaughter. In reviewing the evidence in homicide cases, it is well-settled that the test of sufficiency is "whether, accepting as true all of the evidence, be it direct or circumstantial, and all reasonable inferences arising therefrom upon which, if believed, the trier of fact could properly have based the verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Malone*, 444 Pa. 397, 398, 281 A.2d 866, 867 (1971). See also *Commonwealth v. Johnson*, 458 Pa. 23, 326 A.2d 315 (1974); *Commonwealth v. Pride*, 450 Pa. 557, 301 A.2d 582 (1973); *Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973). It is also axiomatic that the evidence must be viewed in the light most favorable to the verdict winner. *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 272 A.2d 886 (1971). Reviewing the evidence presented at trial in light of the aforementioned principles, we are satisfied that there was sufficient evidence to sustain London's conviction of voluntary manslaughter.[3]

The instant shooting occurred in the mid-evening of August 20, 1970, at the corner of 5th and Berk Streets during an altercation between two rival gangs. The Commonwealth, relying on the testimony of several eyewitnesses, police officers and the recorded statement of the victim, was able to show that during the course of a fist-fight between appellant, a member of the "Montgomery Street" gang, and Frank Thomas, a former member of the "Oxford Street" gang, the appellant pushed the deceased away, "backed off" a number of feet (anywhere

3. Although it is arguable that the Commonwealth was able to show more, *i. e.*, the necessary element of malice for murder in the second degree, the finding of voluntary manslaughter was within the trial court's prerogative. *Commonwealth v. Hoffman*, 439 Pa. 348, 356–57, 266 A.2d 726, 731 (1970). *See also Commonwealth v. Butcher*, 451 Pa. 359, 304 A.2d 150 (1973); *Commonwealth v. Hill*, 444 Pa. 323, 281 A.2d 859 (1971).

from five to ten) and reached into his waist for a gun. At that point, the Commonwealth alleges the appellant, with an outstretched hand, fired two or three times into a crowd of rival gang members. One of these shots mortally wounded Thomas. Although there was some question as to whether appellant had at some point earlier fallen to the ground and fired his weapon while attempting to get up, there was no evidence that appellant was knocked down by the deceased or that the deceased was in any way the aggressor. Further, there was a post-mortem report and sufficient eyewitness testimony supporting the Commonwealth's contention that appellant was standing facing the unarmed victim when he fired the fatal bullet.

Appellant admits that the testimony of one eyewitness, if believed, would support the finding of intentional killing. Nevertheless, appellant argues that, since the inference of self-defense or accidental shooting could also reasonably be drawn from the evidence, the Commonwealth failed to meet its burden.

It is doubtful that any reasonable interpretation of the Commonwealth witnesses' testimony lends support to a finding of self-defense. However, even if appellant's own characterization of the events [4] could have established the necessary elements of self-defense, it was for the trier of fact to accept or reject appellant's version of the facts. *Commonwealth v. Zapata*, 447 Pa. 322, 326, 290 A.2d 114, 117 (1972). It has long been the law that, notwithstanding discrepancies in the evidence or any dissimilarity between a defendant's testimony and that of other witnesses, the trier of fact may believe all, part or none of the testimony of any witness for the

4. Appellant's description of the shooting was that, although he drew his gun and had his finger on the trigger each successive time it fired, he only fired when the deceased attempted to wrestle it from his hand. Appellant also alleged that prior to the shooting Thomas was kneeling over him wielding a knife as appellant lay helplessly on the ground.

Commonwealth or the defense. *Commonwealth v. Ewing,* 439 Pa. 88, 93, 264 A.2d 661, 663 (1970); *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970); *Commonwealth v. Kirkland,* 413 Pa. 48, 195 A.2d 338 (1963). Since it is the trier of fact's responsibility to reconcile any differences by determining who is worthy of belief, the reasonable doubt which will prevent conviction must be the fact finder's doubt and not that of an appellate court. *United States v. Stirone,* 311 F.2d 277, 284 (3d Cir. 1962). With this in mind, since it is clear that a finding of voluntary manslaughter could reasonably be adduced from the Commonwealth's evidence, appellant's first argument must fail.

■■■ The second assignment of error to be considered is whether the trial judge committed reversible error with reference to his rulings relating to the testimony of the Commonwealth witness, John Samuel Foster. Appellant claims that the trial judge erred in permitting the Commonwealth to plead surprise and cross-examine Foster, when Foster's testimony was not harmful to the Commonwealth's case. Further, the appellant contends that, even were cross-examination permissible to discredit Foster's initial testimony, the questioning went beyond mere discreditation and was a device to admit substantive evidence.[5]

When the Commonwealth called Foster to the witness stand, it was to corroborate the testimony of the other eyewitnesses to the shooting by detailing appellant's role in the incident. Foster had previously given a full

5. Appellant also claims that, since the witness repudiated his prior inconsistent statement when cross-examined (claiming he was tired at the time of its making and consequently did not read it "too good"), the statement should not have been introduced into evidence. However, since Foster admitted his making, and identified his signature on, his statement to police, a proper foundation was laid and the prior inconsistent statement was admissible for credibility purposes. (*See Commonwealth v. Rothman,* 168 Pa.Super. 163, 166, 77 A.2d 731, 733 (1951); 2 Henry, Pennsylvania Evidence § 803 at p. 259 nn. 27 & 28 (1953); McCormick, Handbook of the Law of Evidence § 37 (2d ed. E. Cleary 1972).

signed statement to the police in which he related in detail the occurrence similar to other Commonwealth witnesses. At trial, however, Foster testified that he had not seen appellant at the 5th and Berk Street incident and that, although he had seen Thomas being shot, he had not seen appellant fire a gun. Further, Foster testified that had appellant, a friend of four years, been present at that time, he would have seen him.

It is well-settled that when one's witness turns hostile by telling a different version on the witness stand than he told the calling party prior thereto, the latter may plead surprise and request leave to cross-examine the witness and impeach him by his prior inconsistent statement. *See e. g., Commonwealth v. Thomas,* 459 Pa. 371, 329 A.2d 277 (1974); *Commonwealth v. Bynum,* 454 Pa. 9, 309 A.2d 545 (1973); *Commonwealth v. Dancer,* 452 Pa. 221, 305 A.2d 364 (1973); *Commonwealth v. Knudsen,* 443 Pa. 412, 278 A.2d 881 (1971); *Commonwealth v. Turner,* 389 Pa. 239, 133 A.2d 187 (1957). Further, the fundamental rule in this jurisdiction is that it is within the sound discretion of the trial court to decide whether counsel may exercise the right to cross-examine the hostile witness. *Commonwealth v. Thomas, supra; Commonwealth v. Dancer, supra.* Recently, we have reiterated four guidelines for the trial court to follow in determining whether cross-examination is warranted. *Commonwealth v. Thomas, supra.* There is no question that the first and second criteria were met here, *i. e.,* that the witness's testimony was unexpected and that the testimony was contradictory to statements made earlier. Nevertheless, there is some question whether the third and fourth criteria were met, *i. e.,* whether the testimony was injurious to the party calling the witness and beneficial to the opposing side and whether cross-examination was limited to dispute only the unexpected adverse statements.

When discussing what is deemed injurious, the courts in this jurisdiction have continued to maintain that they will be liberal in allowing a party to cross-examine his own witness when "it is believed that the interest of truth and justice so require [citations omitted]. . . . On the other hand, our courts have been loathe to allow cross-examination for purposes of impeachment by use of prior statements when a witness states that he does not know or that he cannot remember. This is so for the reason that such an in-court declaration does not harm the calling party nor aid the opposing party. [Citations omitted.] Hence, when a witness claims he does not know or cannot remember, the prior statements should not be introduced because of the danger that the prior statements will be considered as substantive evidence by the jury." *Commonwealth v. Knudsen,* 443 Pa. at 414–15, 278 A.2d at 882–83.

▇▇▇ Appellant claims that, since the Commonwealth called *other* witnesses whose testimony established that he was at the scene of the shooting, the fact that Foster said *he* did not see appellant was as if he merely disclaimed any knowledge of appellant's participation in the crime. Consequently, appellant would have us believe Foster's testimony was as *neutral* as had he said "I do not remember." We disagree. As was stated earlier, the trier of fact may choose to believe any part of any Commonwealth witness's statement. Since Foster's testimony reflects an unequivocal denial of seeing appellant and cast doubt on appellant having any role in the instant homicide, if the trial judge chose to believe Foster's testimony, appellant would indeed have benefitted. Consequently, it was not error to allow the Commonwealth to "stamp him unworthy of belief."

▇▇▇▇ A review of the record reveals that the trial judge allowed cross-examination for the purpose of impeachment only specifically stating he would not consider

the former statement of Foster as substantive evidence. Yet we are disturbed by the fact that much of the witness's prior statement to police did not contradict the *unexpected* adverse statements made at trial. To the extent that the trial court allowed in testimony regarding the events prior to the 5th and Berk Street confrontation *i. e.,* information not concerning appellants *presence* or *role* in the shooting death), the court was in error. Nevertheless, since the questions concerning prior events did not in any way incriminate the appellant or in any other way advance the Commonwealth's case, the error of admitting excessive testimony was harmless. *See Commonwealth v. Knudsen,* 443 Pa. at 415, 278 A.2d at 883; *Commonwealth v. Linkowski,* 363 Pa. 420, 424, 70 A.2d 278, 280 (1950). *See also Commonwealth v. Thomas,* 459 Pa. at 383–384, 329 A.2d at 283; *Commonwealth v. Dancer,* 452 Pa. at 227, 305 A.2d at 364.

Appellant's third and last assignment of error was that the evidence presented at trial was not sufficient to find the intent to unlawfully and maliciously injure another as required to convict one of carrying a concealed deadly weapon. This argument is meritless. The Commonwealth not only presented eyewitness evidence establishing that appellant both concealed and fired a .22 caliber pistol, through appellant's own testimony the Commonwealth established that on the afternoon of the day of the shooting, appellant purchased a pistol for what he claimed was "no reason." Appellant further admitted that he withdrew this pistol from his pocket while running from the rival gang.

■ Once the Commonwealth introduced evidence that appellant carried a deadly weapon concealed upon his person, the fact finder could conclude beyond a reasonable doubt that appellant possessed the intent to unlawfully and maliciously do injury to another person from the Commonwealth's evidence that appellant had, in

fact, intentionally used this weapon upon a vital part of Thomas' body. Act June 24, 1939, P.L. 872, § 416, as amended; 18 P.S. § 4416; *Commonwealth v. Townsend,* 211 Pa.Super. 135, 235 A.2d 461 (1967); *Commonwealth v. Festa,* 156 Pa.Super. 329, 40 A.2d 112 (1945). *See also Commonwealth v. Cannon,* 453 Pa. 389, 309 A.2d 384 (1973); *Commonwealth v. Minoff,* 363 Pa. 287, 69 A.2d 145 (1950).

The judgment of sentence is affirmed.

MANDERINO, J., concurs in the result.